AO-106 (Rev: 06/09)-Application for Search Warrant

*F I L E D*
*Heidi D. Campbell, Clerk*
*U.S. DISTRICT COURT*
*JUL 02 2025*

# UNITED STATES DISTRICT COURT

for the

Northern District of Oklahoma

| | |
|---|---|
| In the Matter of the Search of<br>*9922 East 21 Place, Tulsa, Oklahoma 74129* | )<br>)<br>)<br>)<br>) |

Case No. 25-mj-571-CDL

**FILED UNDER SEAL**

## APPLICATION FOR A SEARCH WARRANT

I, a federal law enforcement officer or an attorney for the government, request a search warrant and state under penalty of perjury that I have reason to believe that on the following person or property *(identify the person or describe the property to be searched and give its location)*:

See Attachment "A"

located in the ___Northern___ District of ___Oklahoma___, there is now concealed *(identify the person or describe the property to be seized)*:

See Attachment "B"

The basis for the search under Fed. R. Crim. P. 41(c) is *(check one or more)*:

☑ evidence of a crime;

☑ contraband, fruits of crime, or other items illegally possessed;

☑ property designed for use, intended for use, or used in committing a crime;

☐ a person to be arrested or a person who is unlawfully restrained.

The search is related to a violation of:

| *Code Section* | *Offense Description* |
|---|---|
| **18 U.S.C § 1591(d)** | **Obstructing Sex Trafficking Enforcement** |

The application is based on these facts:
**See Affidavit of Robert David, attached hereto**.

☑ Continued on the attached sheet.

☐ Delayed notice of ___ days (give exact ending date if more than 30 days: _____ ) is requested
under 18 U.S.C. § 3103a, the basis of which is set forth on the attached sheet.

_____
*Applicant's signature*

TFO Robert David, HSI
*Printed name and title*

Subscribed and sworn to by phone.

Date: July 2, 2025

_____
*Judge's signature*

City and state:  Tulsa, Oklahoma

Christine D. Little, U.S. Magistrate Judge
*Printed name and title*

## IN THE UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF OKLAHOMA

| | |
|---|---|
| In the Matter of the Search of *9922 East 21 Place, Tulsa, Oklahoma 74129* | Case No. _____<br><br>**FILED UNDER SEAL** |

### Affidavit in Support of an Application
### Under Rule 41 for a Warrant to Search and Seize

I, Homeland Security Investigations (HSI) Task Force Officer (TFO) Robert David, being first duly sworn under oath, depose and state:

### Introduction and Agent Background

1. I make this affidavit in support of an application under Rule 41 of the Federal Rules of Criminal Procedure for two separate search warrants for the person and locations specifically described in Attachment A of this affidavit, including: the entire property located at 9922 East 21 Place, Tulsa, Oklahoma 74129, within the Northern District of Oklahoma, (the "Subject Residence"); and

2. The requested search warrant contemplates the seizure of cell phones located at the Subject Residence which are believed to contain evidence of violations of 18 U.S.C § 1591 - Sex trafficking of children or by force, fraud, or coercion, which items are more specifically described in Attachment B of this affidavit.

3. I am a federal law enforcement officer as defined under Rule 41(a)(2)(C) and am authorized to request this search warrant because I am a government agent who is engaged in enforcing federal criminal laws and I am within the category of

officers authorized by the Attorney General to request such a warrant. I am assigned

to the Tulsa Police Department (TPD) Special Investigation Division's (SID) Human

Trafficking and Vice Unit (HTV) and have been a Tulsa Police Officer since 2015. I

have been a federal Task Force Officer with Homeland Security Investigations since

2019. I received a bachelor's degree in Multidisciplinary Studies from the University

of Oklahoma in Norman, Oklahoma. I have been trained in the recognition of

controlled dangerous substances by the Tulsa Police Academy, as well as informal

training received from more experienced human trafficking and narcotics

investigators. In December 2018, I completed the one-week Basic Narcotics

Investigators School hosted by the United States Drug Enforcement Administration's

training staff. I am also a graduate of the Reid School of Interview and Interrogation.

I have received training in Transnational Gang Identification and Interdiction from

the Midwest Counterdrug Training Center. I have been involved in several human

trafficking and narcotics investigations which have led to numerous search warrants

and arrests. I have also received additional informal training from more experienced

investigators and have participated in numerous investigations and arrests involving

controlled dangerous substances, firearms, and prostitution. I am also designated as a

human trafficking expert in federal court.

    4. I am familiar with the facts and circumstances of this investigation. The

facts set forth in this affidavit are based on my personal observations, knowledge

obtained from other law enforcement officers, my review of documents related to this

investigation, conversations with others who have personal knowledge of the events

2

and circumstances described herein, and a review of open-source information including information available on the Internet. Because this affidavit is submitted for the limited purpose of establishing probable cause in support of the application for a search warrant, it does not set forth each and every fact I or others have learned during the course of this investigation.

5. Based on my training, experience, and the facts set forth in this affidavit, there is probable cause to believe that evidence of violations of Title 18 United States Code, Section 1591(d) (Obstructing Sex Trafficking Enforcement), will be located at 9922 East 21 Place, Tulsa, Oklahoma 74129, Northern District of Oklahoma, including outbuildings and vehicles on the curtilage premises

## Jurisdiction

6. "[A] warrant may be issued to search for and seize any property that constitutes evidence of a criminal offense in violation of the laws of the United States." 18 U.S.C. § 3103a.

7. Title 18 United States Code, Section 1591(d) (Obstructing Sex Trafficking Enforcement). Venue is proper because the person and property described in this affidavit are located within the Northern District of Oklahoma. Fed. R. Crim. P. 41(b)(1).

## Definitions

8. The following definitions, inclusive of all definitions contained in 18 U.S.C. §§ 2246 and 2256, apply to this affidavit and the attachments incorporated herein:

3

a. The "Internet" is a global network of computers and other electronic
   devices that communicate with each other. Due to the structure of the
   Internet, connections between devices on the Internet often cross state and
   international borders, even when the devices communicating with each
   other are in the same state;

b. "Internet Protocol address" or "IP address" refers to a unique number used
   by a computer or electronic device to access the Internet. IP addresses can
   be dynamic, meaning that the ISP assigns a different unique number to a
   computer every time it accesses the Internet. IP addresses may also be
   static, which means the ISP assigns a user's computer a particular IP
   address that is used each time the computer accesses the Internet;

c. "Electronic Mail," commonly referred to as email (or e-mail), is a method
   of exchanging digital messages from an author to one or more recipients.
   Modern email operates across the Internet or other computer networks.
   Email systems are based on a store-and-forward model; that is, email
   servers accept, forward, deliver, and store messages. Neither the users nor
   their computers are required to be online simultaneously; they need only
   connect briefly, typically to an email server, for as long a period of time as it
   takes to send or receive messages. One of the most commons methods of
   obtaining an email account is through a free web-based email service
   provider such as, Outlook, Yahoo, or Gmail. Anyone with access to the
   Internet can generally obtain a free web-based email account;

4

d. A "hash value" or "hash ID" is a unique alpha-numeric identifier for a digital file. A hash value is generated by a mathematical algorithm, based on the file's content. A hash value is a file's "digital fingerprint" or "digital DNA." Two files having identical content will have the same hash value, even if the file names are different. On the other hand, any change to the data in a file, however slight, will change the file's hash value, even if the file name is unchanged. Thus, if two files have the same hash value, they are said to be identical, even if they have different file names;

e. "Cloud storage service" refers to a publicly accessible, online storage provider that can be used to store and share files in large volumes. Users of cloud storage services can share links and associated passwords to their stored files with others in order to grant access to their file collections. Such services allow individuals to easily access these files through a wide variety of electronic devices such as desktop computers, laptops, mobile phones or tablets, from anywhere. Many services provide free access up to a certain size limit;

f. "Minor," as defined in 18 U.S.C. § 2256(1), refers to any person under the age of eighteen years;

g. "Records," "documents," and "materials," as used herein, include all information recorded in any form, visual or aural, and by any means, whether in handmade, photographic, mechanical, electrical, electronic, or magnetic form;

5

## Background on Digital Media Storage Devices

9. The ability of a computer (including a smartphone) to store images in digital form makes the computer itself an ideal repository for child pornography. The size of the electronic storage media (commonly referred to as the hard drive) used in home computers has grown tremendously within the last several years. These drives can store thousands of images at very high resolution. Given the storage capabilities, modern computers can retain many years' worth of a user's data, stored indefinitely. Even deleted data can often be forensically recovered. Other digital media storage devices (e.g., compact disks, digital video disks, thumb drives, etc.) can also store tremendous amounts of digital information, including digital video and picture files.

10. As is the case with most digital technology, communications by way of computer can be saved or stored on the computer. Storing this information can be intentional, i.e., by saving an email as a file on the computer or saving the location of one's favorite websites in, for example, "bookmarked" files. Digital information can also be retained unintentionally, e.g., traces of the path of an electronic communication may be automatically stored in many places (e.g., temporary files or ISP client software, among others). In addition to electronic communications, a computer user's Internet activities generally leave traces or "footprints" in the web cache and history files of the browser used. Such information is often maintained indefinitely until overwritten by other data. Further, even if deleted, forensic examination can sometimes recover files and data including deleted picture files. I know that computers such as laptops, iPhones, and other smartphones can be

forensically examined, and forensic analysts can learn much detail about the user's habits and online activities, including websites visited, files downloaded, Google searches performed, locations where the device was used, dominion and control information, etc.

11. Computers and other digital file storage devices can store the equivalent of thousands of pages of digital information. Especially when the user wants to conceal criminal evidence, he or she often stores it in random order with deceptive file names. This requires the searching authorities to examine all the stored data to determine whether it is included in the warrant. This sorting process can take days or weeks depending on the volume of the data stored, and it would be generally impossible to accomplish this kind of data search on site. Furthermore, I know that smartphones (a type of "computer," as broadly defined in 18 U.S.C. § 1030(e)(1)) like an iPhone can typically "synch" with a traditional desktop or laptop computer. The purpose of synching a smartphone to a traditional computer is to back up data that is stored on the phone so that it is not permanently lost if the portable smartphone is lost or damaged. Also, smartphone users may move files off the smartphone and onto a computer to free up storage space on the smartphone. Similarly, computer (e.g., desktop computers, smartphones, etc.) users may move files off of one computer onto another computer or digital file storage devices such as a thumb drive, a DVD, an external hard drive to free up space on the computer. For this reason, I am seeking authorization to seize all computers and digital file storage devices at the Subject Residence—not any particular computer.

7

### Identification of the Device to be Seized

12. The property to be seized is:

    a. a black Apple iPhone belonging to Trinity Goudeau

    b. a pink Apple iPhone belonging to Trinity Goudeau

    c. a cell phone belonging to Monique Goudeau

### Probable Cause

13. On June 3, 2025, a Grand Jury indicted WILLIAMS IV, RUFF, GAGE, COX, GOUDEAU, MELTON, BELL, and CHARLES for Conspiracy to Commit Sex Trafficking and other individual counts in 25-CR-197-JFH. Later, on June 16, 2025, all eight suspects were arrested in either the Northern District of Oklahoma or the Northern District of Texas.

14. GOUDEAU did not have any cell phones on her person at the time of her arrest. After she was arrested, she was taken to the David L. Moss jail in Tulsa County, Oklahoma. GOUDEAU made a series a recorded calls to individuals concerning the case. Specifically, on June 16, 2025, GOUDEAU made a series of call to D.G., her mother. Some of the pertinent calls included the following:

    a. GOUDEAU tells D.G. to retrieve her $600 and says her phone and her money were in her mother's couch. D.G. states says "your girl" took your phone. GOUDEAU tells D.G. she better get the phone back.

    b. GOUDEAU tells D.G. she better find GOUDEAU's phone because there is money in it. She then tells her mother to call "Mo" because she needs her belongings. Through the investigation, I have identified "Mo" as Monique Goudeau, GOUDEAU's cousin.

8

c. GOUDEAU tells D.G. to call "TaeTae Foster." Inv. Summers located a Facebook profile matching the name provided, https://www.facebook.com/taetae.foster. GOUDEAU says she needs TaeTae to call "Nessa," who has GOUDEAU's other iPhone containing her contacts. Inv. Summers later identified TaeTae as Tashiona Foster.

d. D.G. gets Foster's number, 936-221-0775.

15. On June 16, 2025, GOUDEAU makes recorded call calls to Foster at 936-221-0775. Some of the pertinent calls included the following:

e. Foster states she has been on the phone with Monique all day. Foster states "Nessa" called her and told her GOUDEAU got arrested. GOUDEAU keeps using the phrase "on the set." I know from my training and experience this is a common term used by criminal street gang members.

f. Foster says Monique has no problem taking GOUDEAU's baby from D.G. GOUDEAU says she got the call this morning that "ole girl" got arrested in Dallas. I believe this to be a reference to GAGE, who was also arrested on the morning of June 16, 2025.

g. Foster said she doesn't know how GOUDEAU's sister, K.F., didn't get arrested when she got stopped. I know K.F. was stopped by the US Marshals on June 16, 2025, while looking for GOUDEAU.

h. Foster states she thinks K.F. is a snitch to make herself look better. GOUDEAU says, if she is missing money from her bag at D.G.'s house, Foster and Monique need to take her remaining money and child from her mother. GOUDEAU alludes to a lot going on between Gage and herself and not wanting any of that at D.G. house.

i. Foster says "Juicy" and "Red" texted "Nessa." Foster reads one of the texts and says, "Pretty knocked us together with a laughing emoji." Tashiona says Nessa responds with something about law enforcement having "a warrant to search my bitch phone and why Blue's sister just

9

posted a U.S. Marshal just talked to her. Cuz remember pretty pimped her sister for a little bit." I know "Pretty" is an alias for GAGE.

j. GOUDEAU tells Foster to take her child from her mom if needed. They discuss where GOUDEAU's daughter can stay.

k. Foster and Monique arrive at D.G.'s house and tell GOUDEAU she has $390 instead of the $610 GOUDEAU is supposed to have. They put the phone on speaker. GOUDEAU asks D.G. where her money is. GOUDEAU is angry at her mother and keeps asking about her money. GOUDEAU says she is about to start "stripping n*****s." GOUDEAU tells Foster to check the wallet Monique took from GOUDEAU's mother. GOUDEAU says she knows her mother gave K.F. $100. Mother denies taking it. GOUDEAU says she is about to beat someone

l. GOUDEAU tells Foster to take her phones, purse, necklace and her child from her mother's house.

16. On June 17, 2025, GOUDEAU makes recorded calls to Foster. Some of the pertinent calls included the following:

m. Foster states they have both a pink phone and a black phone belonging to GOUDEAU. Monique says GOUDEAU's mother said they could take the baby.

n. Foster says D.G. said they could take all of GOUDEAU's belongings the day before. Foster said D.G. had problems with them taking the baby, but ultimately said take everything.

o. GOUDEAU says she went to court and saw "little sister name on a piece of paper."

17. On June 18, 2025, , GOUDEAU makes a recorded call to D.G. During the call GOUDEAU asked if K.F. put her in jail. She asked D.G. to talk with K.F.

10

Mother says it was not her, but Savannah [Gage]. Trinity says, "I really hope K.F. didn't put me in here."

    18. On June 20, 2025, GOUDEAU makes a recorded call to D.G. During the call, D.G. told GOUDEAU that K.F. is no longer at her house and DHS is finding her a placement.

    19. On June 20, 2025, GOUDEAU makes a series of recorded calls to Foster. Some of the pertinent calls are as follows:

> p. GOUDEAU tells Foster to call Monique. Foster says Monique's phone number out loud so she can be called on another phone, 918-960-7944. Foster says Monique says she is on her way to pick up GOUDEAU's sister, to meet GOUDEAU's "aunt" (sounds like "am"). GOUDEAU cuts off Foster so she doesn't finish her sentence. GOUDEAU puts Monique on speaker. Foster says she's on her way to do that thing.

> q. GOUDEAU told Foster to "deliver a message" to Janessa [whom investigators believe to be "Nessa" based on the totality of the circumstances]. GOUDEAU says she will beat Janessa's ass if Janessa doesn't bring her her phone. Foster says she and Monique have been trying to get the phone on behalf of GOUDEAU. GOUDEAU says she needs the phone or she "will beat this bitch senseless." GOUDEAU says Janessa added her on the jail kiosk.

> r. Foster said she talked to Nessa. GOUDEAU said to watch what you say on the phone. GOUDEAU asks, "Did that go well with Monique?" GOUDEAU is being veiled about what she is referring to. Foster calls Monique, and GOUDEAU says "do not put her (Monique) voice through this phone." GOUDEAU tells Foster to "figure out if what she went to go do today, if that went good."

    20. On June 21, 2025, TPD responded to the Wirth Law Firm, located at 500 W. 7th Street, Tulsa, Oklahoma. The call notes state K.F. came for an interview and advised she is a runaway, disclosed sexual abuse, and is currently in the conference

room but the caller was concerned she would run away. Additionally, that K.F. is

limping with an apparent leg injury and will need EMSA.

21. Patrol responded and spoke with Theodore Hasse, who identified himself

as K.F.'s attorney in a pending federal human trafficking case (*See* 25-CR-197-JFH).

Additionally, that K.F. reported she prostituted herself to pay for necessities since

she is homeless. K.F. said the injury to her leg from a fight a couple days prior. K.F.

refused treatment by EMSA.

22. The officers confirmed K.F. was still listed in NCIC as a runaway and

made a referral to DHS. After speaking with DHS and D.G., K.F. was returned to

D.G.'s residence.

23. I confirmed a runaway report was made by D.G. on June 19, 2025.

24. On June 22, 2025, GOUDEAU made a record call with D.G. where she

told GOUDEAU to stay away from Monique and that D.G. will put Monique under

the jail. D.G. said Monique went to jail for taking K.F. to speak with the lawyer.

GOUDEAU told D.G. to quit talking and be mindful of being on recorded calls.

D.G. said she did not want to get charged for anything due to Monique's actions.

25. On June 24, 2025, DHS spoke with K.F. and D.G. on June 24, 2025. K.F.

stated after leaving D.G.'s house on June 19, 2025, she stayed with a friend and did

not return to D.G.'s house until the police brought her back on June 21, 2025.

Further, that she got a call from Monique on June 21, 2025, stating GOUDEAU's

attorney wanted to talk with her. Monique picked her up and took her to the lawyer's

office. D.G. stated that she received a call from GOUDEAU's lawyer asking for

permission to interview K.F. D.G. gave permission but was not present at the office for any portion of the K.F. meeting with the lawyer.

26. Additionally, D.G. confirmed that Foster and Monique came into her home without permission and took GOUDEAU's child and belongings, to include GOUDEAU's phones. I have confirmed with DHS that they took custody of GOUDEAU's child from Monique on June 18, 2025, at 9922 E. 21st Place, Tulsa, Oklahoma. At that time, Monique confirmed she obtained items belonging to GOUDEAU from the D.G.'s house.

27. Based on the totality of the investigation, I believe GOUDEAU's phone will contain historical evidence to corroborate interstate movement, communications, and financial activity. Additionally, it will contain updated information about GOUDEAU's recent contacts with members of the STO.

28. Additionally, I believe that based on the content of the recorded calls, GOUDEAU believes K.F. is the main witness against her. Based on Foster and Monique's statements and actions, I believe they are willing to engage in unlawful behavior to further GOUDEAU's interests. I believe this includes improperly influencing K.F., based on the use of coded language regarding the meeting, GOUDEAU's insistence they do not reference the interview with the lawyer, put Monique's voice on the recorded call, the fact Monique took K.F. to meet with the lawyer, and that D.G. was worried about being charged with something to do with Monique's actions. Based upon the communications between Foster and Monique

13

referenced in the calls, I believe her cellphones will contain further evidence of the attempts to influence K.F.'s testimony.

29. On July 2, 2025, Human Trafficking Investigators with the Tulsa Police department, and myself arrived at the SUBJECT RESIDENCE to attempt to contact Monique Goudeau. Officers contacted Monique and served her with a grand jury subpoena. She was asked to step outside and was served with a federal search warrant, 25-mj-551-SH. That warrant authorized the search of Monique Goudeau's person for cell phones. She refused to honor the search warrant and told officers that if they returned with a residential search warrant, she would let them search her house to search for the cell phones. While talking with officers, Monique called out to one of her children inside the house to retrieve her, Monique's cell phone, and record the officers. This indicates that at least one of the cell phones in question is located within the house.

### Conclusion

30. Based on the information set forth in this affidavit, I submit there is probable cause to believe that Title 18 United States Code, Section 1591(d) (Obstructing Sex Trafficking Enforcement) was violated and that evidence of this offense, more fully described in Attachment B, are located at the site described in Attachment A. I respectfully request that this Court issue search warrants for the location described in Attachment A, authorizing the seizure of the items described in Attachment B.

Respectfully submitted,

Investigator Robert David
Task Force Officer
Homeland Security Investigations


Subscribed and sworn to by phone on July 2, 2025.

CHRISTINE D. LITTLE
UNITED STATES MAGISTRATE JUDGE

## ATTACHMENT A

### Property to be Searched

The property to be searched is a residence located at 9922 East 21 Place, Tulsa, Oklahoma 74129, further described as a single-story residence located in the 9922 East 21 Place, Tulsa, Oklahoma 74129. The numbers "9922" are present to the right of the garage door and are black in color.

The premises to be searched is located within the Northern District of Oklahoma, described above, and pictured below:



## ATTACHMENT B

### Particular Things to be Seized

a. a black Apple iPhone belonging to Trinity Goudeau

b. a pink Apple iPhone belonging to Trinity Goudeau

c. a cell phone belonging to Monique Goudeau